# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-2298
_____

DAVID EDWARD JOHNSON,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Bradford County.
James M. Colaw, Judge.

March 20, 2024

B.L. Thomas, J.

Appellant challenges the denial of his motion for postconviction relief after an evidentiary hearing. He asserted that he was provided ineffective assistance of counsel because his trial attorney: (a) undermined his defense by presenting inconsistent testimony; (b) opened the door to testimony that Appellant exercised his right to remain silent when confronted by police; (c) failed to object to inadmissible child hearsay statements; (d) failed to seek appropriate redaction of the victim's child protection team interview; (e) elicited testimony about collateral, uncharged crimes; and (f) failed to object to the victim advocate sitting with the victim when she testified at trial and to the alleged victim indicating that the victim advocate had been with her since the outset of the case. Appellant argued that the cumulative effect of

trial counsel's various instances of deficient performance deprived him of a fair trial. The postconviction court found that several claims constituted deficient performance but that Appellant failed to establish that he was prejudiced by counsel's errors.

We find no merit in the claim about the victim advocate, but because the cumulative effect of trial counsel's errors here are sufficient to undermine this Court's confidence in the outcome, we reverse and remand for a new trial. *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

Appellant was charged with one count of lewd or lascivious molestation on a person older than 12 but less than 16, in violation of section 800.04(5)(c)(2), Florida Statutes.

The State called the investigating detective as its first witness. On cross-examination, trial counsel asked the detective if she personally reached out to Appellant, if at any point in her investigation she spoke to Appellant, or if she ever received any statements from him. The State objected arguing the inability of law enforcement to contact Appellant was a *Miranda* issue. The trial court noted that the implication based on the phrasing of the questions and the opening statement was that law enforcement did not attempt to get Appellant's version. Accordingly, the trial court ruled the door had been opened for the State to fairly rebut that implication.

On redirect, the State asked why law enforcement was not able to get Appellant's statement. The Detective explained that Appellant "wished to remain silent."

Trial counsel testified it was not a mistake asking questions that opened the door on the right to remain silent. She had tried other cases with that prosecutor, made the same implication, and he did not catch it. She had planned to use it in her closing because it had worked before.

The State's next trial witness was an investigator with the Child Protection Team.

The State asked the investigator: "The incident that was the subject of this interview -- when did it occur," to which the

2

investigator responded, "There was more than one, but the most recent had been the Sunday prior to the interview. 2/2 of 2020." The State asked, "What stood out about that Sunday?" The response: "That it appeared to be an experience that had been escalating and it was enough for her to be able to report it."

Additionally on direct, the investigator summarized the events that the victim relayed to her on the evening of the incident, including instances of indecent exposure, which were uncharged. The recorded interview was then admitted and published to the jury. The video included the victim's description of various incidences of indecent exposure that occurred on the evening in question, before and after the charged molestation. Trial counsel stipulated to the video of the CPT interview. She did not object to any of the child hearsay statements or to testimony about the uncharged offenses.

On the first question on cross-examination, trial counsel asked:

Q. You stated earlier, during your direct examination, that you felt the behavior was escalating. Can you describe what you mean by "escalating"?

A. The sexualized behavior -- there was some incidents that occurred prior to 2/2.

Q. Were they sexual in nature as well?

A. They were.

The next witness was the victim's mother, the daughter of Appellant's wife. The mother testified to the events and circumstances that led to her calling the police. On cross-examination, she testified to having talked with her mother about going to the police and stated, "We had one conversation before I went to the police." Trial counsel asked, "What was that conversation?" The answer:

The conversation was -- I asked her, you know, [the victim] confided in my mom first. She told her what happened.

And then [the victim] came to me and told me what had happened.

And so at that point, my mom had had an opportunity to talk to Dave. And I asked my mom, "Well, what did he say?" And, you know, she told me they had a conversation between her and Dave that he had said that [the inappropriate touching] *was a mistake, and he didn't mean to do it.* And I told her that there was no way that was a mistake because she was laying on her stomach.

The State called the victim as its last witness. On cross-examination, trial counsel elicited testimony about two of the uncharged exposure incidents. After the State rested, the court was in recess for lunch allowing trial counsel time to talk to Appellant about testifying.

Trial counsel recalled the Child Protection Team investigator as the first defense witness and asked about details from the interview, including, once again, that Appellant exposed himself to the victim that evening.

Appellant then testified in his own defense. He testified unequivocally that he did not touch the victim inappropriately or expose himself. Trial counsel did not ask if he had told his wife that the touching was accidental.

Lastly, Appellant's wife took the stand. Trial counsel did not ask the wife if Appellant had told her the touching was accidental and did not ask if she had made such a statement to her daughter. On cross-examination however, Appellant's wife confirmed that she had had a conversation with Appellant where he admitted to touching the victim but said it was an accident. The State then asked, "But he did admit to touching her inappropriately." And she responded, "Right."

At the evidentiary hearing on the motion for postconviction relief, trial counsel testified that it was a mistake to ask the victim's mother about the conversation. Counsel had not asked the same question at deposition and she did not know what the answer would be. Surprised by the statement at trial, counsel also admitted that she did not discuss the statement with Appellant or

4

his wife to find out if this testimony was true or impeachable before calling Appellant and then his wife to testify.

Trial counsel testified that the State had not filed the required notice for the admission of child hearsay statements, but counsel did not object to a single statement. She also admitted that the State had not filed the required notice for admitting collateral crimes, but she did not challenge any of them. She testified that her strategy was to show the victim was not credible.

Appellant has demonstrated counsel's performance was deficient because the acts and omissions discussed above were not the result of reasonable professional judgment. *Strickland*, 466 U.S. at 690. The cumulative effect of these errors prejudiced Appellant, because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

REVERSED and REMANDED.

Osterhaus, C.J., and Nordby, J., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Thomas D. Sommerville, Law offices of Thomas Sommerville, Orlando, and William R. Ponall, Ponall Law, Maitland, for Appellant.

Ashley Moody, Attorney General, and Heather Flanagan Ross, Assistant Attorney General, Tallahassee, for Appellee.